IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                              *
SARAH L. GARRETT, et al.,
                              *
     Plaintiffs,
                              *
v.                                        CIVIL NO.: WDQ-05-3369
                              *
BALTIMORE CITY COMMUNITY
COLLEGE, et al.,              *

     Defendants              *
```

*     *     *     *     *     *     *     *     *     *     *     *     *

Memorandum Opinion

Sarah Garrett and John Solomon have sued Baltimore City
Community College ("BCCC"); Richard Turner, the Interim President
of BCCC; Joanne Horton, Interim Executive Vice President of BCCC;
and the BCCC Board of Trustees (the "Board"), for defamation and
violations of the Whistleblower Protection Act ("WPA"), 5 U.S.C.
§ 2302(b)(8); Title VII of the Civil Rights Act of 1964; the
Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq.;
the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 et seq.;
the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29
U.S.C. § 1161 et seq.; the Health Insurance Portability and
Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320(d) et
seq.; the Rehabilitation Act, 29 U.S.C. § 791; and the Equal Pay
Act, 29 U.S.C. § 206(d).

Pending is Plaintiffs' motion for sanctions.  Also pending
are Defendants' motions to dismiss or for summary judgment and to

strike Plaintiffs' response to the motion to dismiss and their
response to the motion to strike.

For the following reasons Plaintiffs' motion for sanctions
will be denied.  Defendants' motions to strike will be granted
and their motion to dismiss or for summary judgment granted in
part and denied in part.


I.  Background

Sarah Garrett served as BCCC's Vice President for Learning
and Academic Affairs and Chief Academic Officer.  Complaint,
Count II, ¶ 1-3.  In Count II of the Complaint, Garrett alleges
that she was defamed and fired in violation of the Whistleblower
Protection Act ("WPA") after alleging that BCCC administrators
had misappropriated federal grant money.

In Count III of the Complaint, Garrett alleges that she was
fired while being treated for cancer in violation of the ADA and
Rehabilitation Act.  Compl., Count III, ¶¶ 1-4.  Garrett also
contends that she was unlawfully denied leave in violation of
FMLA, had her health insurance coverage canceled in violation of
COBRA, and had her medical privacy rights invaded in violation of
HIPAA.  Compl., Count III, ¶¶ 1-4.

In Count IV of the Complaint, Garrett alleges that she was
paid less than previous employees in her position because of her
gender in violation of the Equal Pay Act.  Complaint, Count III,

2

¶¶ 1-4; Count IV, ¶ 1.

John Solomon served as BCCC's Dean of Allied Health and Human Services and Executive Assistant to the President. Complaint, Count II, ¶ 4.  In Count II of the Complaint, Solomon alleges that he was defamed and harassed in violation of Title VII when he complained of misconduct by BCCC administrators.[1] Complaint, Count II, ¶¶ 4-7.

In Count IV of the Complaint, Solomon alleges that he was paid less than other employees in his position because of his national origin (West Indian) and gender (male) in violation of the Equal Pay Act.  Complaint, Count IV, ¶¶ 2-3.

Defendants moved to dismiss the Complaint or for summary judgment.  Plaintiffs filed their response 11 days late. Defendants filed a reply and moved to strike Plaintiffs' response as untimely.  Plaintiffs then filed a response to the motion to strike (which included a surreply to Defendants' reply) and moved for sanctions.  In response, Defendants filed a motion to strike Plaintiffs' response to the motion to strike.

II.  Plaintiffs' Motion for Sanctions

Plaintiffs have moved for sanctions and attorney's fees

---

[1] It is unclear whether Plaintiffs are also alleging that Solomon was wrongfully terminated.  Count II is titled "Plaintiffs Were Wrongfully Discharged..." but Plaintiffs do not allege that Solomon was fired or indicate when he was fired.

pursuant to Federal Rule of Civil Procedure 11, arguing that
Defendants have filed frivolous and dilatory pleadings and
"sought to muddy the waters of this case with...personal attacks,
insults and innuendos."  Plaint. Mot. for Sanctions, p. 2.

Plaintiffs, however, have failed to specify which of
Defendants' pleadings are without merit and why they are
sanctionable.  As the Court finds Defendants' motions neither
frivolous nor dilatory, Plaintiffs' motion for sanctions will be
denied.

III.  Defendants' Motions to Strike

A.  Motion to Strike Plaintiffs' Response to the Motion to Strike

Defendants have moved to strike Plaintiffs' response to
Defendants' motion to strike[2], arguing that it constitutes a
surreply which cannot be filed without the Court's permission.
Plaintiffs have not responded.

Under Local Rule 105.2(a), "unless otherwise ordered by the
Court, surreply memoranda are not permitted to be filed."
Plaintiffs' response to the motion to strike responds to
Defendants' motion to strike and then reargues Plaintiffs'
opposition to Defendants' motion to dismiss.  Plaint. Reply to

_____

[2] Plaintiffs' Motion is titled Plaintiffs' Reply to
Defendants' Motion to Strike and Reply to Defendants' Reply to
Plaintiffs' Answer to Defendants' Motion to Dismiss and Motion
for Summary Judgment.

4

Def.'s Mot. to Strike, p. 4.  As this constitutes a surreply that was not ordered by the Court, pages 4-11 (starting with the section titled "No Immunity from Suit") of the motion will be stricken.

B.  Motion to Strike Plaintiffs' Response to the Motion to Dismiss

Defendants have also moved to strike Plaintiffs' response to the motion to dismiss as untimely.  Plaintiffs argue that the filing delay amounts to harmless error.

According to Local Rule 105.2(a), "memoranda in opposition to a motion shall be filed within fourteen days."  Under Rule 6(b)(2), the Court may, upon motion, grant an extension after expiration of time, but only if the failure to act in a timely manner is the result of "excusable neglect."  Federal Rule of Civil Procedure 6(b)(2); *see also Tucker v. Chrysler Credit Corp.*, 149 F.3d 1170, slip op. (4th Cir. 1998); *Miller v. Bristol Compressors*, *Inc.*, 2005 WL 3263053, slip op. (W.D.Va. 2005).  In deciding whether a party's neglect was excusable, the Court will consider the "danger of prejudice to the non-moving party, length of the delay...the reason for the delay including the moving party's role, and whether there was good faith."  *Tucker*, 149 F.3d 1170*, citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

5

Plaintiffs argue that they granted Defendants an enlargement of time to file their answer to the complaint (presumably earning them the entitlement to an unmoved for enlargement of time to respond to the motion to dismiss) and that the delay in filing was harmless error.  Plaintiffs have failed, however, to offer any explanation for their delay in filing and, therefore, have failed to show that the delay was the result of excusable neglect.  Accordingly, Defendants' motion to strike the Plaintiffs' response to the motion to dismiss will be granted.

IV.  Whether the Members of the Board of Trustees are Proper Parties

Plaintiffs have sued the Board and served two of its individual members.  Defendants argue that the individual members are not proper parties to the case.

Although the individual Board members are named in the case style, the Complaint makes no claims against the individual members.  Therefore, the Court interprets the Complaint to be an action against the Board of Trustees, not the individual members in their individual capacities.

V.  Defendants' Motion to Dismiss of for Summary Judgment

Defendants have moved to dismiss the Complaint or, in the alternative, for summary judgment.  As the Court has considered

the evidence offered by Defendants, the motion will be treated as one for summary judgment.  Federal Rule of Civil Procedure 12(b).

Summary judgment is appropriate under Rule 56(c) when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the opposing party must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

Under Rule 56 a party is not entitled to summary judgment

on part of a claim.  *See Felix v. Sun Microsystems,* 2004 WL 911303, slip. op. (D.Md. 2004) *and cases cited therein.*


A.  Count II

1.  Defamation

In Count II of the Complaint, Plaintiffs have alleged that President Turner defamed the defendants by falsely accusing them of plotting the dismissal of the college's former president. Defendants argue in response that: 1) BCCC and its personnel are immune from suit under the Eleventh Amendment; and 2) Plaintiffs have not shown that the claim was brought within the one-year statute of limitations.


a.  Sovereign Immunity

Under the Eleventh Amendment, states and state employees acting in their official capacities are immune from suit in federal court.  *Ballenger v. Owens,* 352 F.3d 842 (4th Cir. 2003); *Lewis v. Bd. of Education,* 262 F.Supp.2d 608 (D.Md. 2003). Although Maryland's Tort Claims Act waives this immunity in certain cases, it does not allow claims against the State to be brought in federal court.  Annotated Code of Maryland, State Government, § 12-104(a).

As BCCC is an arm of the State, *Samuels v. Tschechtelin,* 135 Md. 483 (D.Md. 2000); Annotated Code of Maryland, Education, §

8

16-503, it is immune from suit in this Court.  However, as the
Eleventh Amendment applies only to State employees acting in
their official capacities, President Turner, acting in his
individual capacity, would not be immunized from suit.[3]


b.  Statute of Limitations

Under Maryland law, there is a one-year statute of
limitations for defamation claims.  Annotated Code of Maryland,
Crts. & Jud. Proc., § 5-105.  Defendants argue that even assuming
President Turner is not granted Eleventh Amendment immunity, the
defamation claim against him is time-barred.

However, the party raising a statute of limitations defense
bears the burden of pleading and proving that a claim is
untimely.  *Hecht v. Resolution Trust Corp.*, 333 Md. 324 (Md.
1994); *Newell v. Richards*, 323 Md. 717 (Md. 1991).  As Defendants
have offered no evidence that the defamation claim as to
President Turner is untimely, the motion for summary judgment on
the claim as to President Turner will be denied.

---

[3] Although the Complaint is unclear, the Court will assume
that Plaintiffs are alleging that President Turner defamed
Defendants in his individual capacity.

2.  Whistleblower Protection Act

Plaintiffs claim that they were fired after accusing BCCC administrators of misconduct in violation of WPA.  The WPA, however, does not protect state employees.  *Id.*  Accordingly, Plaintiffs cannot sue the Defendants for violations of the WPA.


3.  Title VII

Plaintiffs allege that President Turner violated Title VII by "purposefully demeaning Solomon's national origin."[4] Defendants argue that Plaintiffs have failed to show that they exhausted their administrative remedies before bringing suit.

Under Title VII, a plaintiff cannot bring suit in federal court until charges have been filed with the Equal Employment Opportunity Commission ("EEOC").  *Chacko v. Patuxent Institution,* 429 F.3d 505 (4th Cir. 2005); *Albero v. City of Salisbury,* 422 F.Supp.2d 549 (D.Md. 2006).  As Plaintiffs have failed to offer any evidence that charges were filed with the EEOC, Defendants' motion for summary judgment will be granted as to the Title VII claim.

---

[4] It is unclear from the Complaint whether Plaintiffs are also alleging that Solomon was fired in violation of Title VII (it is unclear whether Solomon was fired and if so, when he was fired).

4.   Conclusion

For the reasons stated above, Defendants' motion for summary judgment on Count II will be granted as to BCCC, the Board of Trustees and Vice President Horton.  However, as the motion for summary judgment on the defamation claim as to President Turner will be denied and because the Court will not grant summary judgment on part of a claim, the motion for summary judgment on Count II as to President Turner will be denied.

D.   Count III

1.   Americans With Disabilities Act

Plaintiffs have sued under the ADA alleging that Garrett was fired because she became seriously ill.  Defendants argue that the Eleventh Amendment bars Plaintiffs' claim.

Title I of the ADA makes it illegal for employers to discriminate against individuals with disabilities in their employment practices.  42 U.S.C. §12112(a).  The Supreme Court, however, has found that Title I claims against a state are barred by the Eleventh Amendment.  *University of Alabama v. Garrett,* 531 U.S. 356 (2001); *see also Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005); *Williams v. State of Maryland Department of Public Safety,* 2001 WL 34660050 (D.Md. 2001).  Accordingly, Plaintiffs cannot sue under the ADA.

11

2.   Rehabilitation Act

Plaintiffs also allege that Garrett was fired in violation of § 501 of the Rehabilitation Act.  Defendants argue, *inter alia,* that Plaintiffs have failed to show that Garrett exhausted her administrative remedies before filing suit.

A plaintiff seeking to file an action based on the Rehabilitation Act "must first exhaust his administrative remedies promulgated pursuant to Title VII and set forth in EEOC regulations." *Emmert v. Runyon*, 178 F.3d 1283, slip op. (4th Cir. 1999).  Therefore, a plaintiff cannot bring suit under the Rehabilitation Act without first filing charges with the EEOC. As Plaintiffs have failed to offer any evidence that charges were filed with the EEOC, Defendants' motion for summary judgment on the Rehabilitation Act claim will be granted.


3.   COBRA

Plaintiffs appear to allege that Defendants violated COBRA by back-dating her termination date (which allegedly had the effect of causing a lapse in her medical insurance coverage). Defendants argue in response that Garrett has failed to adequately allege a violation of COBRA and that there is no evidence that Garrett's insurance coverage lapsed.

COBRA amended the Employee Retirement Income Security Act of 1974 ("ERISA"), to require a mandatory offer of extended medical

care coverage for employees who have been affected by events
which would cause the termination of their employee health
insurance benefits.  29 U.S.C. §§ 1161-1168.

Although Plaintiffs allege Defendants violated COBRA when
they caused Garrett's insurance coverage to lapse, Plaintiffs
have offered no evidence of a lapse in coverage, nor have they
explained how the back-dating caused her coverage to lapse.
Accordingly, Defendants' motion for summary judgment on the COBRA
claim will be granted.


4.   FMLA

Plaintiffs allege that Defendants violated the FMLA when
they denied Garrett leave while she was seriously ill.
Defendants argue that Garrett was not eligible for FMLA leave.

Under the FMLA, "an eligible employee shall be entitled to a
total of 12 workweeks of leave during any 12-month period."  29
U.S.C. § 2612.  Defendants have offered evidence showing that
Garrett was not eligible for FMLA leave because she had already
taken 12 weeks of leave in the preceding 12 months.  McCombs
Affidavit, ¶ 3-4.  As Plaintiffs have offered no evidence that
Garrett was eligible for additional leave, the Court will grant
summary judgment on Plaintiffs' FMLA claim.

5.   HIPAA

     Garrett contends that Defendants disclosed information about her medical condition in public meetings and a press release in violation of HIPAA.  However, there is no private right of action for HIPAA violations.  *Haranzo v. Department of Rehabilitative Services*, 2005 WL 3019240, slip op. (W.D.Va. 2005); *Runkle v. Gonzales*, 391 F.Supp.2d 210 (D.D.C. 2005).  Accordingly, summary judgment will be granted on Plaintiffs' HIPAA claim.


6.   Conclusion

     For the reasons stated above, Defendants' motion for summary judgment on Count III of the Complaint will be granted.


E.   Count IV

     In Count IV of the Complaint, Plaintiffs allege that they were paid less than previous appointees in their positions in violation of the Equal Pay Act.  Garrett alleges that she received less pay because of her gender, Solomon alleges he was discriminated against because of his gender and national origin.

     The Equal Pay Act, 29 U.S.C. § 206(d), provides that:

     No employer...shall discriminate...between employees on the
     basis of sex by paying wages to employees in such
     establishment at a rate less than the rate at which he pays
     wages to employees of the opposite sex in such establishment
     for equal work on jobs the performance of which requires
     equal skill, effort, and responsibility, and which are
     performed under similar working conditions.

29 U.S.C. § 206(d).

Defendants have provided evidence that Solomon was paid the same salary as the previous Dean of Allied Health and Human Resources and received additional pay for his duties as Executive Assistant to the President.  McCombs Affidavit, ¶ 3,5.  As Plaintiffs have offered no response, Defendants' motion for summary judgment on Count IV as to Solomon's claim will be granted.

Defendants have not, however, contested Garrett's claim. Accordingly, Defendants' motion for summary judgment on Count IV as to Garrett's claim will be denied.


F.  Conclusion

For the reasons stated above, Plaintiffs' motion for sanctions will be denied; Defendants' motions to strike will be granted.  Defendants' motion for summary judgment will be: 1) granted on Count II as to BCCC, the Board of Trustees and Joanne Horton and denied as to President Turner; 2) granted on Count III; 3) granted on Count IV as to the claim against Solomon and denied as to the claim against Garrett; 5) denied on Counts I and V.


<u>May 30, 2006</u>                    _____/s/_____
Date                               William D. Quarles, Jr.
                                   United States District Judge

15